RECEIVED

MAY 2 1 2012

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| HEBERT FARMS | CIVIL ACTION NO. 10-1927 |
| VERSUS | JUDGE DOHERTY |
| SOUTHERN INS. CO. | MAGISTRATE JUDGE HILL |

## MEMORANDUM RULING

Pending before this Court are two cross motions for summary judgment, as follows: (1) Motion for Summary Judgment filed by plaintiff Hebert Farms [Doc. 19]; and (2) Motion for Summary Judgment filed by the defendant Southern Insurance Company (Southern) [Doc. 22]. In its motion, Hebert Farms moves for judgment in its favor "holding that the policy of insurance issued to it by Southern Insurance Company provides coverage for the loss of its rice crop resulting from staining or "stack burning," and argues Hebert Farms "is entitled to Judgment against Southern Insurance Company in the amount of $238,348.71, as well as penalties in the amount of fifty (50%) percent of said amount, reasonable attorneys' fees, with legal interest on all sums from the date of judicial demand until paid, and for all costs of these proceedings." In its motion, Southern asks this Court to "grant summary judgment in favor of Southern dismissing with prejudice the claim asserted by plaintiff for insurance coverage for damage to its rice and all claims by plaintiff for statutory penalties, attorneys' fees, or extracontractual damages" on grounds "[p]laintiff has not produced sufficient evidence to establish that its loss was the result of a covered peril [under the policy], so plaintiff cannot meet its burden of proof." Because both motions turn on the issue of whether coverage exists under the policy in question and implicate all issues alleged in the case, the instant motions are true dispositive cross-motions for summary judgment.

Both parties have filed responsive briefs [Docs. 25 & 28], and Southern filed a Motion for Leave to File Reply Memorandum [Doc. 32], which is herein GRANTED.

In addition, Southern has filed two motions in limine, seeking to exclude or limit the testimony of two experts retained by the plaintiff, Glenn Thibodeaux and Rustin Gilder [Docs. 20 & 21]. For the reasons more fully discussed in this Ruling, the foregoing motions are DENIED AS MOOT.

I.  **Factual and Procedural Background**

The following facts are undisputed:

1. Herbert Farms is a Louisiana partnership conducting a rice farming operation near Leonville, Louisiana in St. Landry Parish, Louisiana.

2. Southern issued Farmowner's Policy No. RRFR159941443 to Hebert Farms for the policy period August 28, 2009 to August 28, 2010.

3. During the fall of 2009, Hebert Farms harvested its rice crop and placed it in five (5) rice dryers bins, or tanks, owned by Hebert Farms and located on the premises.

4. Policy No. RRFR159941443 contains a section of the policy called "Farm Coverage." The Table of Contents of the section entitled "Farm Coverage" contains the following subsections:

   - Agreement
   - Definitions
   - Principal Property Coverage (which contains Coverages E, F, and G)
   - Property Not Covered Under Coverages E, F, or G
   - Incidental Property Coverages
   - Perils Section – Coverages E, F, and G
   - Loss Settlement Provisions

5. The "Principal Property Coverages" subsection of the "Farm Coverage" portion of the policy contains the following subsections:

   - Coverage E – Farm Barns, Buildings, and Structures
   - Coverage F – Scheduled Farm Personal Property
   - Coverage G – Unscheduled Farm Personal Property

6. Coverage F under the "Principal Property Coverages" subsection of the policy states in pertinent part:

"We" cover the classes or items of farm personal property for which a "limit" is shown on the "declarations". Coverage applies while property is on the "insured premises."

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

7. When a "limit" is shown on the "declarations" for Grain, "we" cover grain. This includes threshed seeds, threshed beans, silage, ground feed, and manufactured and compounded stock foods in buildings, structures, sacks, wagons, or trucks. This does not include grain under government loan.

"We" cover grain in stacks, shocks, swaths, or piles in the open only for loss caused by the perils of fire or lightning, vehicles, vandalism, and theft.

7. Under the section entitled "Property Not Covered Under Coverages E, F, or G," the policy contains the following provision:

"We" do not cover:

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

5. the contents of a rice warehouse. rice drying house. cotton gin building belonging to a cotton gin plant or located on gin premises, or machinery, vehicles, or implements that are part of these operations;

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

10. while away from the "insured premises":

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

b. property stored or being processed in manufacturing plants, public elevators, warehouses, seed houses, or commercial drying plants . . . .

3

8. Under the "Perils" Section of the property, the policy contains the following provision:

**PERILS SECTION - COVERAGES E, F, AND G**

"We" insure against direct physical loss to property covered under Coverages E, F, and G caused by the following perils, unless the loss is excluded under the General Exclusions:

1. **Fire or Lightning** - However, "we" do not pay for loss:

   a. resulting from any electrical injury or disturbance to electrical appliances, devices, fixtures, or wiring caused by electrical currents artificially generated unless fire ensues, and then only for the loss caused by such fire; or

   b. caused by fire to the contents usual and incidental to tobacco barns while tobacco is being cured or dried by open fire, and for five days thereafter.

2. **Windstorm or Hail**...
3. **Explosion**...
4. **Riot or Civil Commotion**
5. **Aircraft**...
6. **Vehicles**...
7. **Smoke**...
8. **Vandalism**...
9. **Theft**...
10. **Sinkhole Collapse**...
11. **Volcanic Action**...
12. Earthquake Loss to Livestock
13. Flood Loss to Livestock...
14. Collision...
15. **Electrocution of Livestock**...
16. **Loading and Unloading Accidents**...

It is undisputed the claimed loss in this matter is the loss of a rice crop. According to the briefs, the harvesting of rice includes a "drying" phase, in which rice is dried in structures often called "rice drier bins" by use of electric fans which blow and circulate air into the bins and remove moisture from the rice to prevent accumulation of heat in the rice crop. Hebert Farms argues in the

4

fall of 2009, it harvested its rice crop and placed the crop in rice drier bins or "grain tanks" in order to dry the rice. Each of Hebert Farms's rice drier bins has two electric fans. Hebert Farms argues sometime during the fall of 2009 – but on an unknown date – after the rice crop had been harvested and placed into the rice bins for drying and storage, one of the two fans on each of three rice drier bins stopped working due to a disruption of electrical power to the fans. Hebert Farms contends when it discovered the electric fans were not operating, it immediately took steps to repair the fans. Hebert Farms argues it was determined at that time the three fans in question stopped working due to a failure or disruption of transmission of electricity from the transformers in the three electric fans. These transformers were changed, and the fans began operating again.

Hebert Farms further contends in the spring of 2010, it contracted with Bunge Corporation for the sale of 34000 hundred weights of rice at $13.00 per hundred weight. When the rice was delivered to Bunge Corporation, it was discovered some of the rice was stained – or "stack burned" – which caused Bunge to reject the rice and forced Hebert Farms to sell the rice to other rice mills at greatly reduced prices, resulting in a loss to Hebert Farms of $238,348.71.

Hebert Farms asserted a claim for the loss of its rice crop with Southern under Policy No. RRFR159941443. Southern denied coverage on grounds the loss was not due to a named or covered peril under the policy and therefore, there was no coverage for the loss. Hebert Farms filed suit against Southern on or around November 22, 2010; Southern removed the lawsuit to this Court on or around December 30, 2010 on the basis of diversity jurisdiction.

In its motion for summary judgment, Hebert Farms argues the staining of the rice in question occurred because the three electric fans drying the rice during the rice drying period stopped working, thereby allowing accumulation of excessive moisture and heat in the three rice drier bins

during the drying period. When delivered to the rice mill, the stained rice from the three bins was mixed with rice from all of the bins, contaminating the entire rice crop. Hebert Farms seeks coverage[1] for the loss under the following sections of the policy issued by Southern: (1) the "Farmowners Original Declaration," in which the section entitled "Coverage Schedule" states the premium paid by Hebert Farms for "Farm Barns, Buildings and Structures," the description of which includes "5 Grain Tanks;" (2) the "Principal Property Coverages" section of the policy specifically pertaining to "Scheduled Farm Personal Property;"[2] and (3) the "Perils" section of the policy.[3]

---

[1] As an initial matter, this Court notes the policy attached by Hebert Farms to its motion for summary judgment has an effective date of August 28, 2008 to August 28, 2009. The date of loss alleged by Hebert Farms occurred in the "fall of 2009," therefore, on its face, the policy attached by Hebert Farms provides no coverage whatsoever for the alleged loss. Nevertheless, because Southern attaches to its opposition memorandum a copy of Policy No. RRFR159941443, which is a renewal policy effective from August 28, 2009 to August 28, 2010, this Court has before it the evidence necessary to rule on the cross motions.

[2] Coverage F under the "Principal Property Coverages" section of the policy states in pertinent part:

"We" cover the classes or items of farm personal property for which a "limit" is shown on the "declarations". Coverage applies while property is on the "insured premises."

[ . . . ]

7. When a "limit" is shown on the "declarations" for Grain, "we" cover grain. This includes threshed seeds, threshed beans, silage, ground feed, and manufactured and compounded stock foods in buildings, structures, sacks, wagons, or trucks. This does not include grain under government loan.

"We" cover grain in stacks, shocks, swaths, or piles in the open only for loss caused by the perils of fire or lightning, vehicles, vandalism, and theft.

[3] The Perils section of the policy states:

PERILS SECTION – Coverages E, F, AND G

"We" insure against direct physical loss to property covered under Coverages E, F, and G caused by the following perils, unless the loss is excluded under the General Exclusions:

1. **Fire or Lightning** - However, "we" do not pay for loss:

   a. resulting from any electrical injury or disturbance to electrical appliances, devices, fixtures, or wiring caused by electrical currents artificially generated unless fire ensues, and then only for the loss caused by such fire; or

Southern denies coverage for the alleged loss under the section entitled "Property Not Covered under Coverages E, F, or G,"[4] which excludes coverage for the contents of a "rice drying house," as will be discussed in more detail hereinbelow.

## II. Law and Analysis

### A. Jurisdictional Basis

The instant lawsuit was removed to this Court on December 30, 2010 on the basis of diversity jurisdiction (28 U.S.C. §1332). As jurisdiction in this matter is premised upon diversity jurisdiction, Louisiana law governs the substantive issues of law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). As such, the Court is duty bound to apply Louisiana law to the substantive issues before the Court. The Fifth Circuit's guidance to District Courts in this endeavor is as follows:

> To determine state law, federal courts sitting in diversity look to the final decisions

---

> b. caused by fire to the contents usual and incidental to tobacco barns while tobacco is being cured or dried by open fire, and for five days thereafter.

[4] This section states in relevant part:

**PROPERTY NOT COVERED UNDER COVERAGES E, F, OR G.**

"We" do not cover:

> [ ... ]
>
> 5. the contents of a rice warehouse. rice drying house. cotton gin building belonging to a cotton gin plant or located on gin premises, or machinery, vehicles, or implements that are part of these operations;
>
> [ ... ]
>
> 10. while away from the "insured premises":
>
> [ ... ]
>
> > b. property stored or being processed in manufacturing plants, public elevators, warehouses, seed houses, or commercial drying plants;......

7

of the state's highest court. In the absence of a final decision by the state's highest court on the issue at hand, it is the duty of the federal court to determine, in its best judgment, how the highest court of the state would resolve the issue if presented with the same case....

[The court must] employ the appropriate Louisiana civilian methodology to decide the issues presented the way that [the court] believe[s] the Supreme Court of Louisiana would decide them. Under Louisiana's Civil Code, the only authoritative sources of law are legislation and custom. Thus, in Louisiana, courts must look first and foremost to the state's primary sources of law: the state's constitution, codes, and statutes. As we have previously recognized, the primary basis of law for a civilian is legislation, and not (as in the common law) a great body of tradition in the form of prior decisions of the courts. Indeed, *stare decisis* is foreign to the Civil Law, including Louisiana. Jurisprudence, even when so cohesive and entrenched as to rise to the level of *jurisprudence constante* is merely a secondary law source. Therefore, while it is true that we will not disregard Louisiana appellate court decisions unless we are convinced by other persuasive data that the highest court of the state would decide otherwise, particularly if numerous decisions are in accord on a given issue - the so-called *jurisprudence constante* - we are not strictly bound by them.

*American International Speciality Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003) (internal citations and quotations omitted).

### B. General Summary Judgment Standard

"A party against whom a claim, counterclaim, or cross-claim is asserted or declaratory judgment is sought may, at any time, move with or without supporting affidavits for summary judgment in the parties favor as to all or any part thereof." Fed. R. Civ. Pro. 56(b). Summary judgement is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response by affidavits or is otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if

appropriate, shall be entered against the adverse party.

Fed. R. Civ. Pro. 56(e)

As summarized by the Fifth Circuit in *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994):

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. Id. at 322; *see also, Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir.1993); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir.1991). Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The Supreme Court has instructed:

> The plain language of Rule 56(c) <u>mandates</u> the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Where no such showing is made, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."
>
> [. . . .]
>
> . . . In ruling upon a Rule 56 motion, "a District Court must resolve any factual issues of controversy in favor of the non-moving party" only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint. As set forth above, Rule 56(e) provides that judgment "shall be entered" against the nonmoving party unless affidavits or other evidence "set forth specific facts showing that there is a genuine issue for trial." The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit. *Rather, the purpose of Rule 56 is to enable a party who believes there is no*

9

> *genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.*

*Lujan v. National Wildlife Federation*, 497 U.S. 871, 884, 888-89 (1990)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)(emphasis added)).

The Fifth Circuit has further elaborated:

> [The parties'] burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...[S]ummary judgment is appropriate in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*)(citations and internal quotations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." *Id.* To the contrary, "in reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001).

### C. Standard for Summary Judgment in Cases Involving Named Perils Insurance Coverage

As an initial matter, Hebert Farms seeks coverage under Coverage E for "Farm Barns, Building and Structures" and the "Perils" section of the policy, which covers "direct physical loss" to property covered under Coverage E. The parties do not dispute the policy in question is a

"Covered Perils" or "Named Perils" policy, in that the policy specifically lists the perils covered. In *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 359 (5th Cir. 2010), the Fifth Circuit discussed the burden scheme employed in cases involving summary judgment motions in such cases, as follows:

> As the Louisiana Supreme Court made clear in *Jones*, ***the insured must carry the burden of persuasion to establish that any uncompensated (or under-compensated) damage was caused by a covered peril. Simply put, this is what is meant by the rule that the insured must prove coverage under the policy.*** ***Then, if the defendant-insurer wishes to avoid liability by relying on a policy exclusion from coverage, it has the burden of persuasion to establish that the uncompensated or under-compensated damage is subject to an exclusion.*** Contrary to Allstate's second contention, we have found nothing in Louisiana law to suggest that these respective burdens of persuasion shift between the parties. What does shift—but only during the summary judgment stage—is the burden of production. ***Because at trial the defendant-insurer has the ultimate burden of persuasion that the exclusion is applicable, a defendant-insurer that moves for summary judgment must bear the burden of producing evidence to make out a "prima facie" case that the cause of the uncompensated or under-compensated damage was excluded from coverage. If the defendant-insurer does so, "the burden shift[s] to the [insured] to present evidence demonstrating there remain[s] a material issue of fact."***

(emphasis added). *See also French v. Allstate Indem. Co.*, 637 F.3d 571, 590 (5th Cir. 2011) ("Under Louisiana law, an insured carries the burden of persuasion to establish that any uncompensated (or under-compensated) damage was caused by a covered peril."), *citing Bayle*, 615 F.3d at 358; *Opera Boats, Inc. v. La Reunion Francaise*, 893 F.2d 103, 105 (5th Cir. 1990) ("When insurance is provided by a named-perils clause, the initial burden is on the insured to prove that loss occurred by the named peril."); *Doerr v. Mobil Oil Corp.*, 774 So.2d 119, 123–24 (La. 2000) ("When determining whether or not a policy affords coverage for an incident, it is the burden of the insured to prove the incident falls within the policy's terms. On the other hand, the insurer bears the burden of proving the applicability of an exclusionary clause within a policy." (internal citations omitted)).

### D. Interpretation of insurance contracts under Louisiana law

Louisiana courts construe insurance policies like any other contract, according to the parties'

11

intent as expressed in the words of the policy. La. Civ.Code art. 2045-2048. An insurance policy must be "construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to or made a part of the policy." La. Rev. Stat. § 22:881. The Louisiana Supreme Court emphasized the importance of reasonableness in insurance policy interpretation:

> An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion ....
>
> If after applying the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the insurer and in favor of coverage. Under this rule of strict construction, equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer.
>
> That strict construction principle, however, is subject to exceptions. One of these exceptions is that the strict construction rule applies only if the ambiguous policy provision is susceptible to two or more reasonable interpretations. For the rule of strict construction to apply, the insurance policy must be not only susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable.

*Sher v. Lafayette Ins. Co.*, 988 So.2d 186, 193 (La. 2008) (citations omitted).

### E.  Analysis

Pursuant to the shifting burden analysis to be employed in cases of this type, Hebert Farms must carry the burden of persuasion to establish that any uncompensated damage was caused by a covered peril. At that point, if Southern wishes to avoid liability by relying on a policy exclusion from coverage, it has the burden of persuasion to establish that the uncompensated damage is subject to an exclusion. Because at trial Southern has the ultimate burden of persuasion that the exclusion is applicable, it must bear the burden of producing evidence to make out a "prima facie" case that the cause of the uncompensated damage was excluded from coverage. If Southern does so, the burden shifts back to Hebert Farms to present evidence demonstrating there remains a material issue

of fact.

In its motion, Hebert Farms argues the Coverage Schedule contained within the Declarations section of the policy provides coverage, because it specifically describes – as a "Farm Barn, Building [or] Structure – "5 Grain Tanks" owned by Hebert Farms, and further describes – as "Scheduled Personal Property" – "Farm Products – Grain" as covered items for which there are limits of liability, a deductible, and a premium paid. Hebert Farms also argues the policy provides coverage for "grain," which includes threshed seeds, threshed beans, silage, ground feed, and manufactured and compounded stock foods in buildings, structures, sacks, wagons, or trucks. Additionally, Hebert Farms argues the policy provides coverage under the "Perils" section of the policy, which states as follows:

> **Fire or Lightning** - However, "we" do not pay for loss:
>
> a. resulting from any electrical injury or disturbance to electrical appliances, devices, fixtures, or wiring caused by electrical currents artificially generated unless fire ensues, and then only for the loss caused by such fire; or . . .

In its brief, Hebert Farms argues its expert has opined the likely cause of the three electric fans in question ceasing to operate at the same time was an indirect strike of lightning. However, Hebert Farms acknowledges there is an issue of fact as to whether lightning was the cause of the fans ceasing to work, because there is no definitive evidence put forth by either party which shows what actually caused the fans to stop working. Additionally, Southern has filed two Motions in Limine seeking to exclude or limit the testimony (on various grounds) of two expert witnesses retained by Hebert Farms, both of whom opined that lightning was the cause of the fans in question ceasing to operate for a period of time. Notwithstanding the acknowledged existence of a genuine issue of

material fact concerning the cause of the loss,[5] Hebert Farms argues there is still coverage under the policy, because of several ambiguities contained therein, chief among them the fact that the policy does not define the terms "fire" or "lightning."

Thus, Hebert Farms has raised questions of law, fact, and evidence in its motion for summary judgment that – standing alone – might preclude summary judgment in favor of either party on the issue of coverage. However, this Court need not address the issues raised by Hebert Farms, because this Court concludes even if it were to find Hebert Farms has sustained its burden of persuasion to establish the loss in question was caused by lightning – a covered peril under the policy – the burden would then shift to Southern to establish that the alleged loss is subject to an exclusion. This Court concludes Southern has made out a "prima facie" case that the loss in question is excluded from coverage under another section of the policy, and this Court further concludes Hebert Farms has presented no evidence demonstrating that there remains a material issue of fact for trial with respect to the exclusion, as follows.

In both its opposition to Hebert Farms's motion and in its own free-standing motion for summary judgment,[6] Southern argues coverage for the alleged loss is unambiguously excluded by the "Property Not Covered Under Coverages E, F, or G" section of the policy, which states:

---

[5] Because the policy does not define "direct physical loss," this Court must rely on Louisiana law, which equates "direct loss" to "proximate or efficient cause." *Seacor Holdings, Inc. v. Commonwealth Ins. Co.*, 635 F.3d 675, 682 (5th Cir. 2011), citing *Arias–Benn v. State Farm Fire & Cas. Ins. Co.*, 495 F.3d 228, 231 (5th Cir.2007) ("Louisiana law equates 'direct loss' with proximate cause; an insurance policy, however, may limit or otherwise define 'direct loss.'").

[6] In its briefing, Southern argues Hebert Farms is not entitled to summary judgment in its favor – and, therefore, coverage for its alleged losses – because it fails to meet its burden of proving that its loss was due to a specific named peril in the policy. In this section of its briefing, Southern challenges the assertions of Hebert Farms that the policy's provisions concerning "fire" and "lightning" are ambiguous. However, because of the burden-shifting analysis, Southern must do more than argue a lack of evidence on the part of Hebert Farms. Rather, Southern must also present a prima facie case that the loss is specifically excluded by the policy. Because this Court concludes Southern successfully meets its burden, an analysis of Hebert Farms's arguments is unnecessary.

14

## PROPERTY NOT COVERED UNDER COVERAGES E, F, OR G

"We" do not cover:

* * *

 5. the contents of a rice warehouse, rice drying house, cotton gin building belonging to a cotton gin plant or located on gin premises, or machinery, vehicles, or implements that are part of these operations;

* * *

 10. while away from the "insured premises":

* * *

  b. property stored or being processed in manufacturing plants, public elevators, warehouses, seed houses, or commercial drying plants . . . .

According to the plaintiff's answers to interrogatories, the precise location where the loss of plaintiff's rice crop occurred was "rice bins located at 1764 Highway 103, Port Barre, Louisiana." The rice harvested by Hebert Farms was brought to its "dryers," which Eric Hebert, a partner at Hebert Farms, described in his deposition as "a set of grain bins with two fans on each bin" where the rice is dried.[7] Mr. Hebert also testified the "bins" consist of flat floors, pitched roofs, and walls.[8] Southern argues each "dryer" or "grain bin" is nothing more than a structure for housing rice while the rice is being dried, i.e., a "rice drying house." Additionally, although Southern acknowledges a "drying house" is not expressly defined by the policy, it argues the term should be given its ordinary prevailing meaning and cannot be construed to mean anything other than "a structure where

---

[7] *See* Deposition of Eric Hebert, attached as Exhibit "B" to Southern's Motion for Summary Judgment, Doc. 22, at p. 18.

[8] *Id.* at p. 102.

rice is dried." Southern argues the bins are structures existing for the purpose of drying rice, and under the policy, the contents of the bins – the rice itself – is expressly not covered.

In response, Hebert Farms argues the "rice drying house" provision of the policy cannot exclude coverage because it is ambiguous, specifically, because it does not define "rice warehouse" or "rice drying house." Hebert Farms argues the language in the provision makes it unclear whether the provision refers to *any* "housed" structure, or to grain bins and/or commercial drying mills. Hebert Farms further argues because its "5 Grain Tanks" are specifically listed in the Coverage Schedule of the Declarations page as covered property, the policy cannot exclude these tanks from coverage in another section. In other words, Hebert Farms argues the policy is ambiguous and cannot reasonably be interpreted to include the "5 Grain Tanks" as covered property in the Coverage Schedule and then exclude those same tanks from coverage as "rice warehouses" or "rice drying houses."

This Court disagrees with the position taken by Hebert Farms and concludes the policy is not ambiguous. Southern is correct that this Court must examine the entirety of the insurance contract in interpreting whether coverage is afforded by its terms. Pursuant to Louisiana law, an insurance contract is to be constructed as a whole, and each provision in the policy must be interpreted in light of the other provisions, so that each is given meaning. Ergo, one portion of the policy should not be construed separately at the expense of disregarding other provisions. Louisiana Civil Code Article 2050.[9]

---

[9] Article 2050 states:

> Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole.

LA. CIV. CODE art. 2050.

In the instant case, Hebert Farms attempts to create ambiguity in the policy by arguing the policy's failure to define "rice warehouse" or "rice drying house" suggests the foregoing could refer to any housed structure, grain tank, or commercial drying mill. With respect to the commercial drying mill argument, this Court notes the policy contains a provision – indeed, another provision within the same section as the "rice drying house" provision – which states:

**Property Not Covered Under Coverages E, F, or G**

"We" do not cover:

************************************

    10.     while away from the "insured premises":

******************************

        b.    property stored or being processed in manufacturing plants, public elevators, warehouses, seed houses, or commercial drying plants; . . .

The foregoing provision contemplates that rice may be taken off the premises for the purpose of being dried in a commercial drying facility. Under the policy, however, rice "being processed" in a "commercial drying plant[]" – which reasonably refers to rice "away from the insured premises" – is not covered. The implication of the foregoing provision is that rice kept *on the premises* for purposes of drying – in a "rice drying house" or other structure used for the purpose of drying rice – also is not covered.

This Court also agrees with Southern that the "5 Grain Tanks" – with their flat floors, pitched roofs, and walls – are indeed structures being used for housing rice while the rice is being dried. Thus, under the plain and ordinary meaning of the words, this Court concludes the term "rice drying house" means "a structure where rice is dried." Under the express language of the policy, when the

grain tanks are used to store rice that is being dried, the contents of the tanks – the rice itself – is not covered.

Thus, after construing the language of the entire policy and giving meaning to all its provisions, this Court concludes the term "rice drying house" unambiguously refers to an on-premises structure used for drying rice.[10] In the instant case, it is undisputed Hebert Farms used the grain bins referenced on the Coverage Schedule in the Declarations section of the policy to dry the lost rice crop in question. In response to Southern's argument, Hebert Farms has come forward with no evidence, jurisprudence, or testimony showing that the grain bins in question cannot or should not reasonably be construed as "rice drying houses." Rather, Hebert Farms has argued only its "belief" that because the Coverage Schedule reflects coverage for the "5 Grain Bins," the remaining provisions of the contract cannot exclude coverage for the rice that was contained therein. This argument is not sufficient to sustain Hebert Farms's burden.[11]

### III. Conclusion

Considering the foregoing, IT IS ORDERED that the Motion for Summary Judgment [Doc. 19] filed by Hebert Farms is DENIED in its entirety. IT IS FURTHER ORDERED that the Motion for Summary Judgment [Doc. 22] filed by Southern Insurance Company is GRANTED in its entirety, and all claims asserted by Hebert Farms against Southern, including those claims for extra-

---

[10] This Court is not unsympathetic to the plight of the plaintiff, who clearly might have believed it was purchasing insurance to protect its rice crop. However, this Court is bound by the language in the insurance contract and cannot grant coverage where coverage clearly has been excluded.

[11] Because the Court concludes Southern has sustained its burden of showing there is no coverage under the exclusion contained within the policy for "rice drying houses," and Hebert Farms has not met its burden to meet that showing, this Court need not address the plaintiff's argument that Southern seeks to exclude coverage under endorsements/exclusions relating to power disruption that were not part of the policy when it was issued to Hebert Farms. Additionally, Southern has withdrawn all portions of its Answer in which defenses based on the foregoing endorsement/exclusions were raised. Therefore, the plaintiff's argument on this point is moot.

contractual damages, penalties, attorneys' fees and other costs,[12] are DENIED and DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that the parties shall submit a Final Judgment, approved as to form, within ten days of the date of this Ruling.

THUS DONE AND SIGNED in Lafayette, Louisiana, this __21__ day of May, 2012.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

---

[12] Absent a valid underlying claim for breach of contract there is no cause of action for statutory penalties against Southern. *See, e.g., Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 363 (5th Cir. 2010) (under Louisiana law, breach of contract is a condition precedent to recovery for the breach of the duty of good faith; where appellate court agreed with district court that Allstate did not breach its insurance contract with plaintiffs, appellate court held district court properly denied plaintiffs' claim for statutory penalties), *citing Clausen v. Fidelity and Deposit Co. Of Maryland*, 660 So.2d 83, 85-86 (La. App. 1st Cir. 1995) ("…..a plaintiff attempting to base her theory of recovery against an insurer on these statutes must first have a valid, underlying, substantive claim upon which insurance coverage is based. The penalties authorized by these statutes do not stand alone; they do not provide a cause of action against an insurer absent a valid, underlying, insurance claim.").